The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement submitted prior to the hearing as:
 STIPULATIONS
1. Employee is Rosalie Moore.
2. Employer is K-Mart.
3. K-Mart is self insured and has complied with all rules of the commission regarding self insureds.
4. Defendant employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act.
5. An employer-employee relationship existed between the employer and employee on June 20, 1996.
6. The parties agree that there was an incident on 20 June 1996 but could not agree that it caused a compensable injury.
7. Issues to be heard:
 a) Was employee injured by accident arising out of and in the course of her employment?
b) What amount of TTD is owed over what period?
c) Are the medical costs compensable?
***********
Based upon all of the competent evidence of record, and reasonable inferences drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a 57 year old female with a high school degree who had worked for K-Mart since 1975. Plaintiff worked from 1975 until 18 April 1997. Her average weekly wage at the time of the injury was $452.20, which yields a compensation rate of $301.47.
2. On 20 June 1996, plaintiff was performing her regular duties as a layout person for K-Mart when she was asked to go to the warehouse area to help unload a shipment. Plaintiff was standing in the warehouse area where boxes of new merchandise had been stacked high awaiting receipt of other merchandise when a case of tennis balls fell and hit her left temple. When it hit her she turned and then a heavier case of exercise equipment hit her back. This incident and resulting injury constituted an injury by accident within the course and scope of employment, compensable under the Workers' Compensation Act.
3. Plaintiff reported the incident to K-Mart's personnel manager, filled out an accident report and continued to work. She was seen at First Care urgent care facility in Chapel Hill and diagnosed with a contusion to her head and an abrasion to her back and shoulder. After additional follow up care and referral to an orthopedic surgeon, she was diagnosed with a torn rotator cuff and tendinitis in her shoulder. Her treating physician, Dr. Richard F. Bruch, opined, and the Full Commission finds as a fact, that the injury of 20 June 1996 caused the torn rotator cuff and tendinitis affecting her shoulder, a compensable occupational disease under N.C. Gen. Stat. § 97-53(13). Dr. Bruch opined, and the Full Commission finds as a fact, that plaintiff's work at K-Mart caused the tendinitis and that such work placed her at an increased risk of contracting this disease than the public generally.
4. A reasonable inference from Dr. Bruch's testimony, which the Full Commission finds as a fact, is that persons of the age of plaintiff on the date of the accident do not ordinarily suffer a torn rotator cuff without trauma and that the trauma likely occurred when plaintiff stiffened following contact with the case of tennis balls and in this stiffened condition was susceptible to such a tear when the heavier case of exercise equipment hit her.
5. Before her injury by accident, plaintiff had never had any problem working and she had never missed work due to her shoulder. Many co-workers witnessed her injury and it was reported to management within minutes. Her employer sent her for medical care.
6. Following 20 June 1996 plaintiff immediately had problems doing her stocking/lay out job. Her physical condition got worse and she could no longer build the shelves at shoulder level or stock the shelves at shoulder level.
7. She was taken out of work on 18 April 1997 by her orthopaedic surgeon, Dr. Bruch. Following surgical repair of the torn rotator cuff she was released to work on 15 September 1997 by Dr. Bruch, who kept her on the same restrictions he placed her under on 25 April 1997. Those restrictions were no lifting above shoulder level with right arm; occasional lifting above waist level; routine lifting to waist level for an indefinite period. Because of her compensable tendinitis and torn rotator cuff, plaintiff can never return to the job she was doing when the boxes fell on her on 20 June 1996. Dr. Bruch rated her with a 20% permanent impairment of the right arm.
8. Plaintiff's condition with respect to her torn rotator cuff and tendinitis is not expected to get any better. Because of these conditions she cannot perform heavy lifting with her right shoulder. Even at home, she can occasionally get something down from the closet with her right hand, but cannot place objects on a hanger. She lives with her daughter and has no income. She does make the bed and does some laundry. She does not empty the dryer. She does some cooking. She rarely drives. She does not perform grocery shopping. In addition to her shoulder pain she has chronic backache and lower extremity pain at both hips, knees, and chronic heel pain. She awakens at night with pain about her hips and has to get up and sleep in a recliner.
9. Plaintiff's treatments by Dr. Paula Babiss and Dr. George B. Brothers, Jr., at Kaiser Permanente and by Dr. Bruch, including her shoulder surgery, were reasonable and necessary as a result of her compensable injury and compensable occupational disease and are hereby authorized by the Full Commission.
10. The defendants paid to plaintiff disability payments, which were funded solely by the defendants. Said payments lasted 24 weeks and ended in October, 1997.
11. Because of her age, training, job experience and condition brought about by her compensable torn rotator cuff and compensable tendinitis, plaintiff cannot find employment for wages and is not likely to be able to find employment for wages for the remainder of her life.
12. Because of her compensable torn rotator cuff and compensable tendinitis, plaintiff will be in need of medical treatment for the remainder of her life.
***********
Based upon the foregoing findings of fact the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident, which is the cause of her rotator cuff injury to her arm and shoulder. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff sustained an occupational disease which disease is characteristic and peculiar to her employment. N.C. Gen. Stat. § 97-53(13).
3. Because plaintiff's inability to earn wages in her former position with defendant-employer or in any other position continued subsequent to 15 September 1997, her disability on that date was total. Because of her age, training, job experience and condition brought about by her compensable torn rotator cuff and compensable tendinitis, plaintiff cannot find employment for wages and is not likely to be able to find employment for wages for the remainder of her life.
Plaintiff is thus entitled to permanent and total disability payments for the remainder of her life.
4. As the result of her 20 June 1996 injury by accident and her compensable occupational disease, plaintiff is entitled to have defendants pay permanent and total disability compensation at the rate of $301.47 per week from 18 April 1997 and continuing for the remainder of her lifetime or until further Order of the Commission N.C. Gen. Stat. § 97-29.
5. As a result of her injury by accident on 20 June 1996 and her compensable occupational disease, plaintiff is entitled to have defendants pay for all medical expenses incurred during her lifetime for her compensable torn rotator cuff and compensable tendinitis, including expenses related to the treatment provided by Drs. Bruch, Babiss and Brothers. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a week for week credit for disability payments made to plaintiff from a disability plan funded entirely by defendants. N.C. Gen. Stat. § 97-42.
***********
Based upon the foregoing, the Full Commission enters the following:
 AWARD
1. Defendants shall pay permanent and total disability compensation to plaintiff at the rate of $301.47 per week from 18 April 1997 and continuing for the remainder of plaintiff's lifetime or until further Order of the Commission. The amounts which have accrued to the date of this Opinion and Award, minus the credit hereafter given, shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendants shall receive week for week credit for the 24 weeks of disability payments made to plaintiff pursuant to an employee funded plan.
3. Defendants shall pay for all medical expenses incurred by plaintiff during his lifetime as the result of her injury by accident on 20 June 1996 and her compensable occupational disease, including expenses related to the treatment provided by Drs. Bruch, Babiss and Brothers.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. With respect to the compensation which is paid in a lump sum, this fee shall be deducted and paid directly to counsel for plaintiff. Thereafter, plaintiff's counsel shall receive every fourth check.
2. Defendants shall pay the costs, including an expert witness fee in the amount of $180.00 to Dr. George B. Brothers.
This 21st day of June 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ J. HOWARD BUNN, JR. CHAIRMAN
S/_____________ BERNADINE S. BALLANCE COMMISSIONER